# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AARON EIGER, KENDRA CHERRY and
KELLY HALEY FUCILLO, individually and
on behalf of all others similarly situated,

       Plaintiffs,

       v.

BAYERISCHE MOTOREN WERKE
AKTIENGESELLSCHAFT AND BMW
OF NORTH AMERICA, LLC,

       Defendants.

Civil Action No. 26-cv-

**CLASS ACTION COMPLAINT
AND JURY TRIAL DEMAND**

Plaintiffs Aaron Eiger ("Eiger"), Kendra Cherry ("Cherry") and Kelly Haley Fucillo ("Fucillo") (referred to as "proposed class representatives" or "Plaintiffs") through their counsel, on behalf of themselves and all other individuals and entities similarly situated as more fully described *infra*, initiate this proposed class action against Bayerische Motoren Werke Aktiengesellschaft (hereinafter "BMW AG") and BMW of North America, LLC (hereinafter "BMW LLC") (hereinafter collectively referred to as "Defendants") and allege as follows:

1.      Defendants in this action designed, manufactured and/or sold certain 2014 through and including 2021 model year BMW and MINI[1] passenger motor vehicles including 1 Series, 2 Series, 3 Series, 4 Series, 5 Series, X1, X2, X3, X4, MINI Cooper, Clubman and Countryman (collectively "class vehicles" or "class vehicle") equipped with the B46, B48 and/or B58 engine (collectively "class engine" or "class engines").  Proposed class representatives and members of the proposed class request injunctive relief, monetary damages, including multiple damages where applicable, court costs and attorney fees against each of the respective BMW entities based upon their breach of express warranty, breach of implied warranty, and violation of consumer protection laws of Illinois, North Carolina and California

---

[1] MINI is a marque of the BMW Defendants.

(jointly referred to as "state consumer protection laws").

2.    The class engine oil filter housing is reasonably expected by Defendants, proposed class representatives and proposed class members to last the serviceable life of the vehicle that is in excess of 150,000 miles.[2]  The class engine oil filter housing often fails at less than 50% of their reasonably expected useful life.  Proposed class representatives' class vehicles experienced premature engine oil filter housing failure.

3.    Class engine oil filter housing failures cost vehicle owners between $2,000.00 and upwards of $3,500.00 to repair depending on the class vehicle.  Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engines became public information.

**JURISDICTIONAL AND VENUE STATEMENT**

4.    Federal jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715 since there are in excess of 50,000 class members and the named proposed class representatives and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with residency in different states.

5.    BMW AG is a person under this jurisdiction's long-arm statute.  In the United States, BMW LLC acts as the alter ego and/or agent of BMW AG and MINI as well as the warrantor with

---

[2] Service and Warranty Information materials for class vehicles have maintenance schedules that extend to 150,000 miles.  There is no scheduled maintenance or replacement recommended for engine oil filter housing during the entirety of this mileage or time period.  Service and Warranty Information materials for class vehicles recite the following with respect to vehicle maintenance:

The BMW Maintenance Program is a benefit designed to help reduce the cost of ownership. This program has been devised with the following objectives: to maximize vehicle safety, reliability, and resale value by minimizing breakdowns resulting from wear, and minimizing cost and inconvenience by computing maintenance intervals based upon the specific manner in which each individual vehicle is driven.

respect to the class vehicles. *In personam* jurisdiction exists over Defendants under this jurisdiction's so-called "long-arm statute." BMW LLC and MINI maintain their corporate headquarters in New Jersey and Defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States. Defendants also conduct continuous, purposeful and pervasive economic activities in this jurisdiction and throughout the United States. Defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States. Subjecting Defendants to *in personam* jurisdiction in New Jersey does not violate Defendants' due process rights and comports with requirements of fair play and substantial justice.

6.    Venue is conferred by 28 U.S.C. § 1391 as Defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

**THE PARTIES**

**Plaintiffs**

7.    Plaintiff Eiger is an adult individual who resides in Chicago, Illinois. In December 2020, Eiger purchased a used MINI Countryman S equipped with a class engine from an authorized Illinois BMW MINI dealer. Eiger's class vehicle experienced an engine oil filter housing failure in July 2025. At the time of the failure, his class vehicle had approximately 62,428 miles. Eiger incurred approximately $1,695.31 in expenses for replacement of the leaking engine oil filter housing in his vehicle.

8.    Plaintiff Cherry is an adult individual who resides in Cary, North Carolina. In May of 2022, Cherry purchased a used 2019 BMW X3 equipped with a class engine in North Carolina from CarMax. In November of 2024, Cherry's class vehicle was diagnosed by an authorized BMW dealer as

3

requiring a replacement of the leaking engine oil filter housing.  At the time of the diagnosis, the vehicle mileage was 79,312 miles.

9.    Plaintiff Fucillo is an adult individual who resides in Aliso Viejo, California.  In August of 2025, Fucillo purchased a used 2018 BMW 430i in California from Carvana.  In January of 2026, Fucillo's vehicle was diagnosed as requiring a replacement of the leaking engine oil filter housing.  At the time of the diagnosis, the vehicle mileage was 68,342 miles. Fucillo incurred approximately $4,000.00 in expenses for replacement of the leaking engine oil filter housing in her vehicle.

**Defendants**

10.    Defendant BMW AG is a duly organized German corporation with a principal place of business in the city of Munich in the province of Bavaria, Germany.  BMW AG designed, manufactured and tested class engines, including but not limited to the oil filter housing incorporated in class engines.  BMW AG drafted and published the owner's manual and Service and Warranty Information pamphlet and other materials that accompanied class vehicles and/or were published on the Internet.  BMW AG is the parent company of BMW LLC.

11.    Defendant BMW LLC is a duly organized Delaware corporation with a principal place of business located at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey.  BMW LLC manufactures, imports, distributes and/or sells BMW and MINI motor vehicles including all class vehicles and also acts as the authorized representative of BMW AG in the United States.  BMW LLC operates its national marketing, warranty, consumer relations and engineering offices from its New Jersey facility.  BMW LLC also controls all other aspects of its United States activities from New Jersey including class vehicle importation.

12.    BMW LLC sells and distributes vehicles manufactured by both BMW AG, BMW LLC and MINI throughout the United States via a network of over three hundred independent authorized dealerships.  BMW LLC drafted and published the owner's manual and Service and Warranty

4

Information pamphlet and other materials that accompanied class vehicles and/or were published on the Internet.  BMW LLC acted, and continues to act, as the warrantor of vehicles constructed by both Defendants sold in the United States.

13.     At all relevant times, BMW LLC acted as an authorized agent, representative, servant, employee and/or alter ego of BMW AG performing activities concerning but not limited to advertising, marketing, warranties, warranty repairs, dissemination of technical information and monitoring the performance of BMW and MINI vehicles in the United States, including substantial activities that occurred within this jurisdiction.  There is sufficient overlapping and intertwining of the activities of BMW AG, MINI and BMW LLC in the United States that the principles of corporate separateness should not be applied.

14.     New Jersey has the most significant relationship to the conduct that gave rise to this litigation since BMW LLC's wrongful activities were orchestrated at its New Jersey headquarters.  New Jersey law should govern all substantive aspects of this litigation.  That conduct includes concealing defects described in this complaint and other activities to deny warranty coverage to defective engine components that should have been replaced under the new vehicle warranty without cost to the class vehicle owner as described in this complaint.

**CLASS ACTION ALLEGATIONS**

15.     The proposed class representatives bring this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed class and state subclasses (or any other class authorized by the Court) defined as follows:

**Nationwide Class**: All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their vehicles in the United States (hereinafter "proposed class members" or "class members" or "the Nationwide Class").  Excluded from the proposed class are Defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, Defendants' counsel and all respective immediate family members of the excluded persons and entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Illinois Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in Illinois, (hereinafter "proposed Illinois class members" or "the Illinois subclass"). Excluded from the proposed class are Defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, Defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**North Carolina Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in North Carolina, (hereinafter "proposed North Carolina class members" or "the North Carolina subclass"). Excluded from the proposed class are Defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, Defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**California Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in California, (hereinafter "proposed California class members" or "the California subclass"). Excluded from the proposed class are Defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, Defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Numerosity of the Proposed Class: Fed. R. Civ. P. 23(a)(1)**

16.     The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 500,000 class vehicles imported into or constructed in the United States. Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from Defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

17.     Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class. These issues include but are not limited to:

(a) Whether class engines were defectively designed or manufactured, including workmanship and materials, so as to subject the engine to premature failure of the oil filter housing;

(b) Whether class engines sustained damage directly or indirectly by premature failure of the oil filter housing;

(c) Whether class vehicles were sold with an owner's manual and/or Service and Warranty Information pamphlet and other materials that incorporated incorrect inspection and service intervals for the engine oil filter housing;

(d) Whether Defendants breached their express warranties (including but not limited to the powertrain-limited warranty) in that class vehicles were defective with respect to engine oil filter housing design and manufacture, including workmanship and materials;

(e) Whether Defendants breached their implied warranties in that class vehicles were defective with respect to the engine oil filter design and manufacture, including workmanship and materials;

(f) Whether Defendants intentionally misrepresented and/or omitted material facts concerning the characteristics of class engines;

(g) Whether Defendants committed unfair and deceptive business act practices by failing to inform owners of class vehicles prior to purchase and/or during the post-sale express warranty period that the engine oil filter housing was defective and would fail shortly after the warranty period expired and potentially cause damage to the engine, and that this defect posed a significant safety hazard;

(h) Whether Defendants were unjustly enriched by their warranty breaches and deceptive and/or unfair conduct described in this complaint; and,

(j) Whether proposed class members are entitled to monetary damages and injunctive relief pursuant to Rule 23(b)(2).

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3)**

18.     The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members.  Class claims arise out of ownership or lease of class vehicles as defined in ¶ 15.  There are no defenses to Plaintiff' claims on the part of defendants that are unique or different from the proposed class.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4)**

19.     The proposed class representatives will fairly and adequately protect the interests of the proposed class and subclasses.  The proposed class representatives' claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence.  In aggregate, the proposed class counsel have over 60 years of experience concentrating in complex automotive products liability and have been appointed class counsel in multiple other proceedings.  Neither Plaintiff nor their attorneys have any interests that are contrary to or conflicting with the class members.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3)**

20.     Maintenance of a class action in one court is the most economical procedural device to litigate the class vehicle claims for class vehicle owners and Defendants.  Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

21.     Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

22.     There is a substantial likelihood that Defendants will oppose this class action and will

further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

23.      Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

**Class Engine Oil Filter Housing Defects**

24.      If designed and manufactured correctly, the class engine oil filter housing should last a minimum of 150,000 miles in a modern automobile such as the class vehicles.  This is demonstrated by Defendants' Service and Warranty Information pamphlet and other materials  accompanying class vehicles, other engines manufactured by Defendants incorporating an oil filter housing which incorporates no schedule for maintenance or replacement of the oil filter housing unit, and performance of comparable competitor vehicles.

25.      The engine oil filter housing incorporates cartridge type oil filter components and the engine oil cooler.  This oil filter housing attaches by bolt fasteners to the side of the class engine block. Class engines are predisposed to premature engine oil filter housing / gasket failures when the polycarbonate housing and sealing gaskets become embrittled due to repeated heating and cooling cycles.  More specifically, the oil filter housing internal wall structures separating the oil and coolant passages fail and/or warp and/or gaskets sealing the various oil and water passages fail.  This occurrence causes the loss of engine coolant that either leaks into the oil sump or drains externally that can result in engine overheating and/or failure.  *See* Figure 1, below depicting typical oil filter housing failure point.



**FIGURE 1: CLASS ENGINE OIL FILTER HOUSING FAILURE**

26.     In order to lower production costs, BMW AG commenced phasing out cast aluminum engine oil filter housings in favor of inferior polycarbonate housings in approximately 2011.  BMW LLC has been concealing the problems with its polycarbonate engine oil filter housings since at least July 2015 when it released Technical Service Bulletin SI B11 13 15 concerning a service action to inspect and replace oil filter housings on N20 engines.[3]  Technical Service Bulletin SI B11 13 15 (August 2015 revision) recites that "The plastic oil filter housing may fail and lead to an internal and/or external engine oil or coolant leak."  *See* accompanying Exhibit 1.  Most notably, this service action was not applicable to N20 engines equipped with aluminum oil filter housing.  "If vehicle is fitted with the aluminum oil filter housing (silver color) then take no further action.  Do not replace any parts." *Id*.  The replacement oil filter housing specified in the Service Action had an aluminum body.

27.     The date of this service bulletin, comments on various web sites and the lead time necessary to investigate class engine oil filter housing failures, redesign and/or retool and manufacture

---

[3] The BMW N20 engine is a predecessor of, and substantially similar to the B46 / B48 class engine.  The B58 uses the same oil filter housing as the B46 / B48 engines.

the updated components demonstrates that Defendants knew and were aware of defects in the redesigned or retooled oil filter housing in late 2013 or early 2014. In further recognition of the inherent weakness in its oil filter housing design (and in an attempt to avoid an expensive service recall of hundreds of thousands of class vehicles), BMW AG introduced in 2021 a "half measure" design update incorporating an inner bushing/insert for the housing water channel most frequently failing. BMW AG knew or should have known this stopgap measure would not correct the inherent structural weakness of the polycarbonate housing. In fact, this measure failed to correct the problem.

28.     In further recognition of the inherent weakness in its oil filter housing design (and in an attempt to avoid an expensive service action or recall of hundreds of thousands of class vehicles), BMW AG introduced in 2021 a half measure design update incorporating an inner plug for the housing water channel most frequently failing. BMW AG knew or should have known this stopgap measure would not correct the inherent structural weakness of the polycarbonate housing without a complete redesign of the mating surfaces and gaskets. In fact, this measure failed to correct the problem.

29.     Another filter housing Service Information Bulletin was published in late 2025 captioned "Coolant leaking from oil filter housing." *See* SIB 11 10 25 attached as Exhibit 2 instructing the technician to inspect for cracks in the bushing/insert and depicting the "redesigned part." MINI issued similar bulletins.

30.     Prior to manufacturing and then distributing a new part, Defendants perform substantial field inspections and quality review of vehicles in service to determine the root cause and diagnosis of a problem. After these tasks are completed, Defendants prepare draft and final specifications prior to setting the revised part out to bid. All of this takes at least twelve months of lead-time under normal circumstances.

31.     Undeterred by earlier premature failures of polycarbonate engine oil filter housing in the similar N20 engine, BMW equipped class engines with a substantially similar defective polycarbonate

oil filter housing. Predictably, class engines are experiencing premature failures of their oil filter housings. Defendants purposefully ignored this polycarbonate class engine oil filter housing defect for years in order to avoid substantial costs associated with remedying these defects under warranty or conducting another service action.

32.    Since Defendants only offer class engine oil filter housings constructed of polycarbonate, independent BMW and MINI specialty shops are offering aftermarket aluminum oil filter housings. Well-known BMW tuner ECS offers its proprietary "Upgraded Metal Version" to "Replace your cracked or leaking housing." *See* Exhibit 3. Parts supplier FCP Euro also offers an aftermarket BMW aluminum engine oil filter housing for class vehicles. *See* Exhibit 4. "Aluminum construction will prevent internal deterioration of the [polycarbonate] oil filter housing and save your B48 engine." *Id.* Even Amazon has gotten into the thriving oil filter housing replacement business by offering dozens of aftermarket Chinese aluminum class vehicle oil filter housings. https://www.amazon.com/s?k=bmw+b48%2F46+oil+filter+housing&crid=3UFUV8J9AX9QP&sprefix=bmw+B48+oil+filter+housing%2Caps%2C204&ref=nb_sb_ss_p13n-expert-pd-ops-ranker_2_26. *See* Exhibit 5 Amazon search results representing approximately 5% of aftermarket oil filter housing replacements offered on Amazon.

**Tolling of the Limitations Period**

33.    Defendants' fraudulent conduct tolls any applicable statutes of limitations since the fraudulent omissions concerning the true cause of failures in class vehicle oil filter housings was inherently unknowable to Plaintiff and the class given the technical nature of the class vehicle design and manufacturing defects, including materials and workmanship.

34.    Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials and workmanship defects in their vehicles or

the requisite technical skills to surmise the proper vehicle maintenance and maintenance intervals for class vehicles, or the ability to take disassemble internal components and inspect them.

35.     State consumer protection laws, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class vehicles because of Defendants' fraudulent conduct, including but not limited to concealment of class vehicle defects and omission of material facts.

36.     Some proposed class members relied on Defendants' fraudulent omissions concealing the cause of class engine oil filter housing failures and therefore delayed bringing suit against Defendants. These omissions relate to the fact that, in reality, filter housings were failing due to manufacture, materials and/or workmanship defects.  Defendants, however, fraudulently attributed the failings of class vehicle oil filter housings to other factors and/or exculpating conditions for which Defendants had no responsibility.

37.     Defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on Defendants' fraudulent omissions.

38.     Defendants are equitably estopped from asserting the statutes of limitations have run against the claims of class members.

**Further Allegations**

39.     Defendants fraudulently, intentionally, negligently and/or recklessly concealed from proposed class representatives and proposed subclass members the defects in class engines even though Defendants knew or should have known of design, materials and manufacturing defects in class engines if Defendants had adequately tested the engines.

40.     Defendants had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing extensive irreversible premature performance degradation in class

engine oil filter housings shortly after production of the class vehicles commenced which were substantially certain to fail.

41.     Defendants engaged in extensive field research and quality investigations and analysis before revising the specifications for the defective part, rebidding the new part and manufacturing and distributing the new part.  In addition, Defendants have and continue to be under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

42.     Defendants failed to inform class vehicle owners prior to purchase or during the express warranty period that their engine oil filter housings were defective and would fail shortly after the express warranty period expired.  Defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of defects in the class engine.

43.     Defendants also failed to inform class vehicle owners at the time of purchase that the oil filter housing in their class vehicle's engine had been inadequately tested prior to placing the car in production and the time of vehicle sale.

44.     Specifically covered by the class vehicle powertrain limited warranty are "all internal [engine] parts" including the engine oil filter housing.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 4 years or 50,000 miles, whichever occurs first for non-commercial purchasers.[4]

45.     Defendants knew in 2013 or 2014 that its defective polycarbonate engine oil filter housing was experiencing premature failures.  Despite this knowledge, Defendants continued to sell class

_____

[4] Class vehicles were accompanied by a limited warranty "against defects in materials or workmanship" for "48 months or 50,000 miles, whichever occurs first" from "the date of first retail sale or the date the vehicle is first placed into service as a sales demonstrator, Aftersales Mobility Program (AMP) Vehicle or company vehicle, whichever is earlier."

vehicles with defective polycarbonate oil filter housing that were defective.  This knowledge is imputed to BMW AG because BMW LLC was monitoring warranty claims and class vehicle performance in the United States, and reporting back to its parent companies located in Germany.

46.    The proposed class representatives and proposed class members had valid and binding warranties and contracts with Defendants and were reasonably expected by Defendants to use their respective class vehicles in the manner in which passenger motor vehicles were used.

47.    The proposed class representatives and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective class vehicles.  The proposed class representatives and proposed class members operated their class vehicles under normal anticipated conditions in noncommercial environments.

48.    Defendants timely received notice of their breach of warranty claims through their authorized BMW representatives contacted by proposed class representatives and have suffered no resulting prejudice.  Moreover, the proposed class representatives contacted BMW LLC directly and/or through an authorized dealership.

49.    Proposed class representatives were informed by a representative of BMW LLC that BMW LLC would not provide assistance in repairing class engine oil filter housings because the vehicles were outside of the express warranty period.

50.    Defendants refused to fully reimburse or compensate the proposed class representatives for vehicle repair expenses or provide a suitable substitute or replacement vehicle.  Although their vehicles' oil filter housing failure occurred outside the unilateral express warranty period (the length of which was not bargained for prior to purchase), the proposed class representatives' class vehicles exhibited unmistakable symptoms (known only by Defendants) of degradation and impending premature failure within the express warranty period.  [I feel like unconscionability is going to be tough sledding.]

51.     Despite actual and constructive knowledge of class vehicle defects as described in this complaint, Defendants failed to cure class vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

52.     Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending oil filter housing failure. This information, however, was well known to Defendants at the time of class vehicle purchase, but not revealed.

53.     The proposed class representatives relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of Defendants at the time of purchase, including but not limited to the useful and expected life of class vehicles and the recommended class vehicle maintenance program.

54.     Defendants' misrepresentations and omissions were received by the respective proposed class representatives prior to and at the point of their class vehicle purchase. These representations were made by BMW and/or MINI dealers referencing publications concerning class vehicles including the owner's manual and the Service and Warranty Information pamphlet and other materials. The representations created a reasonable belief the useful life expectancy of class vehicles without a major engine failure was in excess of 150,000 miles. These representations specifically related that the engine oil filter housing were non-maintenance engine lifetime components.

55.     Defendants actively concealed the defective nature of the class vehicles' oil filter housing, from the proposed class representatives and all class vehicle purchasers. Defendants intentionally failed to inform class vehicle purchasers that class vehicles incorporated a defective and/or improperly tested oil filter housing that would prematurely fail well before the reasonably expected useful life of the vehicle.

56.     Defendants intentionally failed to inform class vehicle purchasers that the oil filter

housing incorporated in class vehicles results in higher operational costs than alternative conventional oil filter housing or other competitive technology because the oil filter housing prematurely fails well before the reasonably expected useful life of the vehicle.

57. Defendants actively and fraudulently concealed the existence of class vehicle material, manufacture and/or design defects (including defects covered under class vehicle warranties concerning materials and workmanship) and that the owner's manual and Service and Warranty Information pamphlet accompanying class vehicles incorporated improper maintenance recommendations and maintenance intervals.

58. Proposed class representatives and class members did not discover that the oil filter housing in their respective class vehicle was defective until after their respective oil filter housing failed.

59. Defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of oil filter housing defects in class vehicles although the service representative received hundreds of consumer complaints that this part prematurely failed. Defendants' employees falsely represented certain conditions for which Defendants were not responsible as the basis for the failures that were in fact caused by a defect in materials, manufacturing and design. They falsely stated that Defendants were not responsible for the resulting class vehicle failures and/or denied the existence of known filter housing defects.

60. Authorized BMW/MINI dealers did not have knowledge of and/or were counseled not to admit that any defects existed in class vehicles or that improper maintenance recommendations were incorporated in the owner's manual and Service and Warranty Information pamphlet. BMW and MINI dealers (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicle failures) improperly blamed vehicle failures on certain conditions for which Defendants would not be responsible and/or denied the existence of defects in the oil filter housing.

61.     Defendants had actual knowledge, constructive knowledge and/or should have known, upon proper inquiry and testing, that class vehicles were defective with respect to their oil filter housing, suffered from extensive irreversible premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of class vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representatives and proposed class members. Proposed class representatives and proposed class members were ignorant of this technical information through no fault of their own.

62.     Defendants acted to conceal the oil filter housing defects during the warranty period so that repair costs would be shifted to the proposed class representatives and proposed class members once the warranty expired and the oil filter housing failed.

63.     Although Defendants knew that defects in class engines caused premature oil filter housing failure, Defendants knowingly and actively concealed material information from prospective purchasers and actual purchasers with the intent to deceive purchasers and promote class vehicle sales.

64.     Defendants' knowledge of class engine oil filter housing defects was derived from warranty claims, field investigations, claims supervisors, customer complaints and monitoring of performance of class vehicles by BMW LLC quality assurance employees.  Additionally, the number of replacement components and subsequent component revisions would have placed Defendants on notice of class vehicle defects.  Knowledge of class vehicle defects is further imputed to Defendants prior to sale of certain model year class vehicles because predecessor models using identical and/or substantially similar oil filter housing components were also prematurely failing within their reasonably expected life. Defendants elected to place into the stream of commerce class vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the oil filter housing.

65.      Additional information supporting allegations of fraud and fraudulent conduct is in the

control of Defendants. This information includes but is not limited to technical root cause analyses, communications with class vehicle owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' oil filter housing were defective.

66.     Material information fraudulently concealed and/or actively suppressed by Defendants includes the defects described in the preceding paragraphs.

67.     Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability. In fact, class vehicles actually contained a known oil filter housing defects that would severely affect the useful life of the vehicle.

68.     Defendants (and particularly the sales and marketing executives at BMW LLC) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 150,000 miles or ten years before experiencing oil filter housing failure. Material information was fraudulently concealed and/or actively suppressed in order to protect Defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit BMW's brand disparagement.

69.     Defendants had a duty to disclose to class vehicle owners that there were materials and manufacture defects in class vehicles and that the owner's manual and Service and Warranty Information pamphlet set forth the wrong maintenance recommendations and maintenance intervals.

70.     The information was material to a reasonable consumer, because, had Plaintiffs and class members been told the concealed information concerning the defective oil filter housing, they would not have purchased their class vehicles or would have not purchased them at the price paid.

71.     This duty arose because Defendants knew that there were defects in the vehicles and inaccuracies in the owner's manual and Service and Warranty Information pamphlet that affected vehicle operation and safety since the class vehicle engine could expectantly seize a result of the oil filter housing failure while class vehicle owners were not, and could not reasonably be, cognizant of these defects and dangers.

72.     Defendants continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representatives and other purchasers.  Defendants breached their affirmative duty of disclosure to class vehicle owners (and particularly to owners who inquired as to the cause of class vehicle failures).[5]

73.     Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed, both pre-sale and post-sale, the existence of defects in class vehicles and omissions in accompanying owner's manual and Warranty and Maintenance pamphlet.

74.     The warranties accompanying class vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class vehicles were defective, the inability of class vehicle purchasers to bargain with Defendants to increase durational warranties, their lack of knowledge of the defect, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored Defendants particularly where there were class vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when class vehicles prematurely fail during their reasonably expected life), absence of effective warranty

_____

[5] Since unexpected engine failure is a serious safety issue, Defendants had an affirmative duty to disclose the vehicle defects together with associated risks.

competition and the fact that class vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models identical to class vehicles.

75.    Purchasers of class vehicles reasonably expect vehicles to function well in excess of the class vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers of class vehicles were led to believe by Defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the oil filter housing was in excess of 150,000 miles and there was no scheduled inspection or maintenance for the oil filter housing within this period.

76.    Given the conduct of Defendants and the manufacture, materials, design and workmanship defects in class vehicles (that Defendants knew were inherently defective prior to the time of sale as well as post-sale), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representatives and proposed class members were neither knowing nor voluntary.

77.    The proposed class representatives and proposed class members had an absence of any meaningful choice in the contractual terms which were unreasonably favorable to Defendants since Defendants were fully aware of defects in the class vehicles that substantially reduced the expected useful life of the vehicle engine components.  The proposed class representatives and proposed class members were unaware of defects in the class vehicles at the time of purchase.

78.    The bargaining position of Defendants for the sale of class vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representatives and proposed class members.  This is because Defendants knew there were defects in class vehicles affecting durational operation and operating costs.

79.    Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that class vehicles were inherently defective and dangerous and had been inadequately tested.

80.    Defendants knew defects in class vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the vehicle engine.  Defendants artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective vehicles.

81.    Defendants unconscionably sold defective class vehicles to the proposed class representatives and proposed class members without informing these purchasers that the class vehicles were defective.  In the alternative, Defendants failed to notify the proposed class representatives and proposed class members after the time of sale that the oil filter housing had been redesigned and that the assemblies in their respective vehicles should be replaced prior to the expiration of the warranty.

82.    Defendants' conduct renders the vehicle purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

83.    The durational limitation of the express warranties accompanying the class vehicles is unreasonable and unconscionable since Defendants actively concealed known vehicle defects and issued incorrect maintenance recommendations and maintenance intervals.  The proposed class representatives and proposed class members had no notice of or ability to detect the defects.

84.    Defendants restricted the limited power train warranty (including the class engine) duration to 4 years or 50,000 miles (whichever occurs first) for class vehicles in an effort to avoid the cost of repairs because they were cognizant of class vehicle defects that existed at the time of sale.

85.    Engines in competitive vehicles manufactured and sold at the time the class vehicles were manufactured and sold ordinarily last longer than warranted by the limited power train warranty accompanying class vehicles.

22

86.     Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal class vehicle materials defects, workmanship defects, manufacturing defects, and improperly recommended maintenance.

87.     Defendants are engaged in a continuing fraud concerning the true underlying cause of class vehicle engine oil filter housing failures.

88.     Defendants failed to adequately test class vehicles in appropriate consumer environments prior to marketing, distribution and sale.

89.     Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies.  Defendants' upper-level management orchestrated this wrongful conduct.

90.     The proposed class representatives and proposed class members operated and maintained their class vehicles in conformity with the respective owner's manual and Service and Warranty Information pamphlet and provided the requisite notice to Defendants' authorized agents for warranty repair after their class vehicles failed.

91.     Even if class vehicle engines do not fail entirely, class vehicle owners have sustained an ascertainable financial loss, including but not limited to increased maintenance costs for oil filter housing inspections and/or premature replacement of the oil filter housing and/or substantially reduced engine performance.  Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class vehicles became public information after the time of their purchase.

92.     The proposed class representatives and proposed class members have not received the benefit of their bargain concerning their respective purchase of class vehicles.

93.     Defendants created an overall misleading impression through their failure to disclose material information concerning the fact that class vehicles incorporated defective oil filter housing and

were accompanied by an owner's manual and Service and Warranty Information pamphlet that incorporated incorrect engine service and maintenance recommendations. The proposed class representatives and proposed class members were deceived by Defendants' conduct as described in this complaint with respect to their purchase of class vehicles.

94. Defendants violated the consumer protection laws of Illinois and North Carolina with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to proposed class representatives and proposed class members.

95. Defendants were under a duty to disclose class vehicle safety defects as described in this complaint but failed to disclose to proposed class representatives and proposed class members the characteristics of class vehicles with respect to defects in violation of the consumer protection laws of Illinois and North Carolina together with all other state consumer protection laws. Defendants' knowing omissions (that class engines were defective and that this defect constituted a safety hazard) deceived purchasers (including but not limited to proposed class representatives and proposed class members). Those knowing disclosure omissions include the fact that class vehicle engine defects had a significant impact on the value, durability and future care of class vehicles. This failure to disclose additional information concerning class vehicle defects had the capacity to, and in fact did, deceive purchasers (including but not limited to proposed class representatives and proposed class members) in a material respect.

96. If proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased the class vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of

class vehicles.

97.    Defendants fraudulently, intentionally, negligently and/or recklessly concealed from proposed class representatives and proposed class members defects in class vehicles even though Defendants knew information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including proposed class representatives and proposed class members.

98.    As a direct result of these knowing omissions, proposed class representatives and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the value and cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

**What the Omissions were**

99.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning class engine oil filter housing defects, in an effort to deceive purchasers as described in this complaint.  At the time of purchase, Defendants fraudulently omitted to disclose material matter regarding the defects in class vehicles, including their impact on future repairs, costs and vehicle reliability.  Defendants fraudulently concealed from the proposed representatives and proposed class members defects in class vehicles even though Defendants knew or should have known that information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers, including proposed class representatives and proposed class members.

100.    Defendants concealed from proposed representatives and proposed class members during their warranty periods that a defect existed with the oil filter housing which could have and should have been fixed during the warranty period, particularly as it was a safety issue, and Defendants' withholding

of this material information deprived proposed representatives and proposed class members of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose**

101.    The proposed class representatives and proposed class members are entitled to the reasonable inference that Defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions.

**The Context of the Omissions and the Manner in which they Misled**

102.    Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including proposed class representatives and proposed class members) premised on affirmations and representations as described in this complaint.

103.    If proposed class representatives and proposed class members had been informed of defects in their class vehicles, they would not have purchased their respective class vehicles or would have paid substantially less.  If proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles since each class member believed they were purchasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty.  Defendants' conduct that violated the consumer fraud statutes alleged herein deprived proposed representatives and proposed class members of that remedy.

**What Defendants Obtained through the Fraud**

104.    Material information concerning class vehicles was concealed and/or actively suppressed in order to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs,

adverse publicity and limit brand disparagement.  Purchasers believed they were obtaining vehicles as having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles.  Defendants had a uniform policy of not properly disclosing class vehicle defects in order to promote sales and increase profits as described in this complaint.

105.    As a proximate and direct result of Defendants' unfair and deceptive business trade practices, proposed class representatives and proposed class members purchased class vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

### COUNT I
### BREACH OF UNIFORM COMMERCIAL CODE § 2-313: EXPRESS WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM
(on behalf of the nationwide class or, alternatively, the
Illinois, North Carolina and California subclasses)

106.    The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

107.    Defendants are merchants with respect to passenger motor vehicles.  Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by Illinois, North Carolina, California and all other adopting states.

108.    Defendants provided class members an express powertrain limited warranty of "4 years or 50,000 miles whichever occurs first, from date the vehicle was first placed in service."  Specifically covered by this powertrain-limited warranty were "all internal [engine] parts" including the engine oil filter housing.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 4 years or 50,000 miles, whichever occurs first for non-commercial purchasers.

109.    Defendants expressly warranted to the general public, owners and lessees of class vehicles that class vehicles were merchantable and fit for the ordinary purposes for which passenger

vehicles are used.  Defendants are merchants with respect to passenger motor vehicles.  The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

110.    The proposed class representatives and proposed class members were not presented with an opportunity to review (let alone bargain for) the warranty provisions at the time of purchase of their class vehicles and were unaware of the defects in the oil filter housing of class vehicle engines that made the respective bargaining position of the parties unequal at the time of vehicle purchase.

111.    Defendants received adequate notice of their breach of their express warranties and failed to cure the warranty breaches.  The proposed class representatives and class members reported to Defendants the problems with and failings of the oil filter housing in their vehicles and requested Defendants that they cure and/or repair and/or replace the defective oil filter housings.  In the alternative, the proposed class representatives, as indirect purchasers, were not required to issue notice of the warranty breach to Defendants and the lack of notice of warranty breach did not result in any prejudice to Defendants.

112.    The proposed class representatives and proposed class members complied with maintenance recommendations for their respective class vehicle.

113.    Defendants failed to remedy by replacement or repair the proposed class representatives' oil filter housings that were defective in materials and workmanship during the express warranty period although these defects were known to Defendants at that time.[6]  Class vehicles owned by the proposed

---

[6] The Service and Warranty Information materials for class vehicles recites as follows:

To obtain warranty service coverage, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW SAV center in the United States or Puerto Rico, during normal business hours.  The authorized BMW SAV center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

class representatives and proposed class members also prematurely failed and/or experienced substantial performance diminution within the express warranty period of 4 years or 50,000 miles.

114.    Because of the oil filter housing defects, class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation.

115.    The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of their class vehicle engines prior to failure.

116.    The express warranty remedy set out in the warranty provisions accompanying class vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of Defendants described, *supra*.

117.    Defendants breached their express warranties in that class vehicles were defective with respect to engine materials, workmanship, and manufacture.  Defendants further breached their express warranties in that class vehicles were accompanied by an owner's manual and Service and Warranty Information pamphlet that incorporated no inspection and service intervals for the oil filter housing although Defendants knew these components were defective and required periodic inspection and service.

118.    Defendants further breached their express warranties by failing to remedy the oil filter housing defects caused by defects in materials and workmanship as required by the warranty accompanying class vehicles.

119.    The proposed class representatives and proposed class members relied on express warranties made by Defendants concerning class vehicles and sustained financial injury resulting from the breach of those warranties by Defendants including replacement of the engine oil filter housing and repair of resulting engine damage.

29

120.     The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles.  Defendants' breach of their express warranties was the direct and proximate cause of the proposed class members' financial harm.

121.     Proposed class representatives and proposed class members demand judgment against Defendants for multiple damages, interest, costs and attorneys' fees.

**COUNT II**
**BREACH OF UNIFORM COMMERCIAL CODE § 2-314: IMPLIED**
**WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS**
(on behalf of the nationwide class or, alternatively, the
Illinois, North Carolina and California subclasses)

122.     The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

123.     Defendants are merchants with respect to passenger motor vehicles.  Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by Illinois, North Carolina, California and all other adopting states.

124.     Defendants failed to provide legally binding written notice to proposed class representatives and other class vehicle purchasers of implied warranty exclusions at time of purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of § 2-316 and was therefore ineffective as a matter of law.

125.     Defendants impliedly warranted to the general public, owners and lessees of class vehicles that the class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.  The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

126.     As manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of implied

warranty.

127.    To the extent privity of contract is required for purposes of the application of implied warranty, the proposed class representatives and proposed class members are third-party beneficiaries to a contract implemented by Defendants that creates an implied warranty of merchantability.

128.    Defendants breached their implied warranties in that class vehicles were defective with respect to engine design and manufacture as described in this complaint and were unfit for the ordinary purposes for which passenger vehicles are used because of those defects which caused premature oil filter housing failure and consequent damage to the engine.

129.    Class vehicles are predisposed to premature failure in normal anticipated operating environments because of engine materials, workmanship and manufacture defects described in this complaint that existed at the time these vehicles were constructed.

130.    Class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure.  Defendants are estopped by their conduct, as described in this complaint, from disclaiming any and all implied warranties with respect to the oil filter housing in class engines.

131.    Proposed class representatives and proposed class members relied on implied warranties of merchantability made by Defendants concerning class vehicles in choosing to purchase their respective class vehicles and sustained an ascertainable financial injury resulting from the breach of those warranties by Defendants.

132.    Defendants received adequate notice of their breach of the implied warranty of merchantability through proposed class representatives and proposed class members' requests for repair or replacement.  In the alternative, class vehicle owners, as indirect purchasers, were not required to issue notice of the warranty breach to Defendants and any lack of notice of warranty breach did not result

in any prejudice to Defendants. Defendants declined to offer the proposed class representatives an effective remedy for their defective class engine or vehicle.

133. Even though the proposed class representatives and proposed class members complied with class vehicle engine maintenance recommendations for their respective class vehicles, their respective class vehicle engines prematurely failed because of defects in the oil filter housing.

134. Proposed class representatives and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of Defendants and upon their implied warranty that class vehicles were of merchantable quality and fit for their intended use. Class vehicles did not conform to Defendants' implied representations or warranties because defects in the oil filter housing caused class engines to be less reliable and more expensive to maintain than competitor vehicles.

135. Proposed class representatives and proposed class members had an independent legitimate consumer expectation that the class vehicles would last well in excess of 10 years and 150,000 miles before requiring any major engine repairs based on industry standards, Defendants' publications and other publications, competitor products, consumer product magazines, prior vehicle ownership and reputation of Defendants for manufacturing durable quality vehicles. There were no statements made by Defendants or their agents that contradicted or caused consumers to lower their legitimate expectations at the time of purchase.

136. The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles because the class engine defects were hidden. Defendants' breach of their implied warranties of merchantability was the direct and proximate cause of proposed class representatives' and proposed class members' financial harm. Had the class vehicles not contained defective and failing oil filter housing, proposed class representatives and proposed class members would not have incurred the costs of engine repair.

137.    Proposed class representatives and proposed class members demand judgment against Defendants including multiple damages, interest, costs and attorneys' fees.

### COUNT III
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
### DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS 505/1 *ET SEQ.*
(on behalf of Plaintiff Eiger and the Illinois subclass)

138.    Plaintiff Eiger incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

139.    Plaintiff Eiger asserts this count on behalf of himself and members of the Illinois subclass.

140.    Defendants' practices, acts, policies and course of conduct, as described above, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that consumers, including plaintiff Eiger and members of the Illinois subclass, rely upon such concealment, suppression, omission in connection with the sale or advertisement of merchandise of class vehicles in violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"), 815 ILCS 505/1 *et seq.* ("Consumer Fraud Act"), when purchasing and/or leasing their respective class vehicles with the defective oil filter housing.

141.    Defendants intentionally concealed, suppressed and omitted to disclose to plaintiff Eiger and members of the Illinois subclass at the time of purchase or lease, that class vehicles contained manufacturing, materials and/or workmanship defects, with the intent that plaintiff Eiger and members of the Illinois subclass rely upon such concealment, suppression, failure to disclose or omission.

142.    Defendants knew and intentionally concealed, suppressed and omitted to disclose to consumers who purchased or leased the class vehicles, including plaintiff Eiger and members of the Illinois subclass, the existence of defects and problems in the oil filter housing, despite the fact that Defendants possessed prior knowledge of the inherent defects to the class vehicles' oil filter housing as

described in this complaint.

143.    Defendants actively concealed from plaintiff Eiger and members of the Illinois subclass the fact that the oil filter housing incorporated in class engines were defective, despite the fact that Defendants learned of such defects in as early as 2013.

144.    Defendants' acts of commission and omission were done with knowledge and intent to induce plaintiff Eiger and members of the Illinois subclass to rely upon Defendants' deceptive misrepresentations and decide to purchase and/or lease a class vehicle.

145.    Defendants' deceptive acts of commission and omission were material and were material to a consumer's decision to purchase and/or lease a class vehicle.

146.    Defendants' conduct was in the course of conduct involving trade or commerce in the sale and/or lease of the class vehicles and/or related activities.

147.    Defendants' acts of commission and omission caused plaintiff Eiger and members of the Illinois subclass to suffer ascertainable losses of money and property in that they were forced to expend sums of money at its dealerships and elsewhere to repair and/or replace the oil filter housing of their class engines, despite the fact that Defendants had prior knowledge of the defects at the time of placing class vehicles into the stream of commerce.

148.    In addition to direct monetary losses, plaintiff Eiger and members of the Illinois subclass suffered ascertainable losses paying for the repairs to their respective class engine oil filter housing or engine replacement caused by defects and received less value than what was promised to them at the time of purchase and/or lease.  Specifically, plaintiff Eiger and members of the Illinois subclass paid for vehicles that are now worth significantly less because of the defective oil filter housing and the damage caused to the class engines.  In addition, Plaintiffs and the Illinois subclass members paid a price premium for a vehicle which did not possess this major component defect, which was knowingly

34

concealed from them. Had they been made aware of the defect, they would not have paid such price premium.

149. A causal relationship exists between Defendants' deceptive and unlawful conduct and the ascertainable losses suffered by plaintiff Eiger and members of the Illinois subclass. Had the defective oil filter housing in the class engines been disclosed, plaintiff Eiger and the Illinois subclass would not have purchased class vehicles, or would have paid less for the class vehicles.

**COUNT IV**
**VIOLATION OF THE NORTH CAROLINA CONSUMER FRAUD AND DECEPTIVE**
**BUSINESS PRACTICES ACT N.C. GEN. STAT. § 75-1.1, *et seq*., ("NCDTPA")**
(on behalf of Plaintiff Cherry and the North Carolina subclass)

150. Plaintiff Cherry incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

151. Plaintiff Cherry asserts this count on behalf of herself and the members of the North Carolina subclass.

152. Defendants engaged in "commerce" in North Carolina within the meaning of the NCDTPA. *See* N.C. Gen. Stat. § 75-1.1(b).

153. The NCDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce." *See* N.C. Gen. Stat. § 75-1.1(a).

154. In violation of NCDTPA, Defendants employed deceptive and/or unconscionable acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of class vehicles in North Carolina. Defendants knowingly concealed, suppressed, and/or omitted material facts regarding the oil filter housing and corresponding safety risk, and misrepresented the standard, quality, or grade of the class vehicles, which directly caused harm to plaintiff Cherry and members of the North Carolina subclass.

35

155.    Defendants intentionally and knowingly misrepresented and omitted facts concerning the oil filter housing with the intent to mislead plaintiff Cherry and members of the North Carolina subclass. Defendants knew, or should have known, that the oil filter housing was defective and was likely to fail shortly outside of the periods of the warranties.

156.    Defendants also knew, or should have known, that the oil filter housing in the class vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle is operating.  Further, Defendants knew, or should have known, that such loss of power could cause the class vehicles to become involved in read-end collisions or other accidents, placing vehicle operators, passengers, and other motorists at risk for injury.

157.    Defendants owed a duty to disclose the oil filter housing defect and its corresponding safety risk to plaintiff Cherry and members of the North Carolina subclass because it possessed superior and exclusive knowledge concerning the defect and the risks associated with the oil filter housing. Rather than disclose the defect, Defendants engaged in deceptive trade practices in order to sell additional class vehicles and wrongfully transfer the cost of repair or replacement of the oil filter housing, damaged engine parts and/or the entire engine to plaintiff Cherry and members of the North Carolina subclass.

158.    Defendants' unconscionable and/or deceptive acts and/or practices and/or affirmative misrepresentations and/or material omissions concerning the oil filter housing were intended to mislead consumers and misled plaintiff Cherry and members of the North Carolina subclass.

159.    At all relevant times, Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations, and/or omissions regarding the oil filter housing and its corresponding safety risk were material to Cherry and members of the North Carolina subclass.  When Cherry and members of the North Carolina subclass purchased their class vehicles, they reasonably relied on the reasonable expectation that class vehicles would not incorporate a defective the oil filter housing and

would not pose an unavoidable safety risk. Had Defendants disclosed that defect existed, Cherry and members of the North Carolina subclass would not have purchased the class vehicles or would have paid less for their vehicles. Had Defendants disclosed the oil filter housing defect existed in the class vehicles and/or presented an unavoidable safety risk, Cherry and members of the North Carolina subclass would have demanded repair or replacement during the warranty periods at no cost as provided for in Defendants' warranties.

160. Defendants owed a continuous duty to Cherry and members of the North Carolina subclass to refrain from unfair and deceptive practices under the NCDTPA and to disclose the oil filter housing defect. Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations, and/or material omissions concerning the defective oil filter housing and its corresponding safety risk are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment and/or omission of the oil filter housing defect and corresponding safety risk in violation of the NCDTPA, Cherry and members of the North Carolina subclass have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the class engine caused by the oil filter housing and/or actual damages in the amount of the cost to replace the oil filter housing. Owners of class vehicles also suffered an ascertainable loss of the benefit of the bargain they reached at the time of purchase, and diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of their business. Plaintiffs and the North Carolina subclass paid a price premium for a vehicle which did not possess this major component defect, which was knowingly concealed from them. Had they been made aware of the defect, they would not have paid such price premium.

161. Defendants' unlawful acts and practices occurred in the conduct of business activities and commerce in North Carolina.

162.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.    Defendants unconscionably marketed the class vehicles to uninformed consumers in order to maximize profits by selling additional class vehicles incorporating the undisclosed latent oil filter housing defect and corresponding safety risk.

163.    Defendants' unlawful acts and practices affect the public interest and present a continuing safety risk to Cherry and members of the North Carolina subclass, as well as the public.

164.    As a direct and proximate result of Defendants' violations of the NCDTPA, Cherry and members of the North Carolina subclass suffered actual financial loss, actual damages, and/or injury-in-fact.

165.    Cherry and members of the North Carolina subclass request actual damages and treble damages against Defendants in an amount to be determined at trial because Defendants acted wantonly or with such conscious indifference to the consequences that malice may be inferred.

166.    Cherry and members of the North Carolina subclass also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, awarding costs and attorneys' fees, and any other just and proper relief available under the NCDTPA.

## COUNT V
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. AND PROFESSIONS CODE §§ 17200 *ET SEQ.*
(on behalf of Plaintiff Fucillo and the California subclass)

167.    Plaintiff Fucillo incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

168.    Plaintiff Fucillo asserts this count on behalf of herself and members of the California subclass.

169.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* prohibits acts of unfair competition including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

170.    Defendants' conduct as described in this complaint violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq.*

171.    Defendants' sale of class vehicles without disclosing the existence of defective engine oil filter housing while misrepresenting the supposed quality and reliability attributes of these vehicles is an unlawful, unfair and deceptive business practice within the context of the UCL.  This conduct was unlawful, unfair and deceptive because it was intended to, and did in fact, mislead and deceive proposed California subclass representative Fucillo and proposed California class members.  If Defendants disclosed to proposed California class representative Fucillo and proposed California class members that class vehicles incorporated a defective oil filter housing, they would not have purchased their respective vehicles or paid less.

172.    Defendants knew that if defects in the engine oil filter housing were disclosed to the consumer public prior to purchase, consumers at large would react similarly and elect to not to purchase class vehicles.  As a result, Defendants intentionally concealed their knowledge of the oil filter housing defects.

173.    As a direct, proximate and foreseeable result of Defendants' unlawful, unfair and deceptive business practices, proposed California class representative Fucillo and proposed California class members sustained an ascertainable loss and actual damages in that they expended tens of thousands of dollars to purchase the defective class vehicles and then were required to spend additional sums to have their defective oil filter housings repaired or replaced.  Moreover, because of the undisclosed defects, proposed California class representative Fucillo, and the proposed California class members, sustained a loss and/or diminution in the value of their vehicles.  Proposed California class

representative Fucillo, and the proposed California class members, have or will incur incidental damages attributable to the loss of use of their class vehicles while the vehicles were or will be repaired.

174.    Defendants' unlawful, unfair and/or deceptive business practices further caused proposed California class representative Fucillo, and members of the proposed California class, to convey money and benefits to Defendants including but not limited to the purchase price or lease payments for their vehicles together with oil filter housing repair or replacement costs.

175.    Proposed California class representative Fucillo, and the proposed California class members, request an order of restitution forcing Defendants to restore to them the benefits and monies they conveyed in connection with their purchase of the class vehicles and repair costs related to the defective oil filter housing.

176.    Proposed California class representative Fucillo, and the proposed California class members, demand judgment against Defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT VI
## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.*[7]
(on behalf of Fucillo and the California subclass)

177.    Proposed California class representative Fucillo, and proposed California class members, incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

178.    Proposed California class representative Fucillo assert this count on behalf of themselves and members of the proposed California class.

---

[7] Upon satisfaction of Cal. Civ. Code § 1782 notice requirements, Fucillo and members of the proposed California subclass intend to amend this count to include monetary damages in addition to the presently requested injunctive relief.  Fucillo's counsel is notifying Defendants by separate letter of the particular violations of the California Consumer Legal Remedies Act and requesting they correct or agree to correct the violations enumerated.  If Defendants fail to correct their violations, Fucillo shall amend the complaint as of right (or otherwise seek leave to amend the complaint) to include compensatory and monetary damages.

179.    Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that class vehicles have characteristics, uses, benefits and/or quantities they do not possess.

180.    Defendants violated Cal. Civ. Code § 1770(a)(7) by representing that class vehicles are of a particular standard, quality or grade, when they are not, and in particular, by supplying vehicles that contain a defect that involves an unreasonable safety issue.

181.    Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising class vehicles with the intent not to sell them as advertised.

182.    Defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

183.    Defendants conducted the above-described acts or practices in transactions intended to result, or that did result, in the sale of class vehicles to customers for personal, family or household use.

184.    Plaintiff Fucillo and proposed California class members, relied on Defendants' affirmative representations that no maintenance would be required for the subject oil filter housings for a duration of at least 150,000 miles and upon Defendants' material omissions as to the defect, in that if the proposed class representatives and proposed class members had been informed of class engine oil filter housing defects, they would not have purchased their respective class vehicles or would have paid substantially less.  Moreover, if the proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles since each class member believed they were purchasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty.

185.    As a result of Defendants' conduct, proposed class representative Fucillo and proposed

41

California class members, were harmed in that the class vehicles experienced failure and required replacement and repair at the expense of Plaintiffs and proposed class members and may continue to experience the aforementioned oil filter housing failures as a result of the defect.

186.    Plaintiff Fucillo and proposed California class members request an order enjoining Defendants' unfair or deceptive acts or practices, restitution, costs of court, and attorneys' fees under Cal. Civ. Code § 1780(e) and any other just and proper relief available under CLRA.

**COUNT VII**
**UNJUST ENRICHMENT**
(on behalf of the nationwide class or, alternatively, the state subclasses)

187.    The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

188.    The warranty had value which Plaintiff paid, and for which Defendants agreed to render services of repair and replace.

189.    Defendants breached their implied and express warranties in that class vehicles were defective with respect to engine materials, workmanship, and manufacture.  Defendants further breached their express and implied warranties in that class vehicles were accompanied by an owner's manual and Service and Warranty Information pamphlet that incorporated incorrect inspection and service intervals. Class vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, and manufacture defects and an owner's manual and Service and Warranty Information pamphlet that incorrectly set forth service intervals.

190.    Defendants intentionally, negligently, recklessly and/or fraudulently misrepresented to proposed class representative and proposed class members the characteristics of class vehicles with respect to engine design materials and/or manufacture together with information in the class vehicles'

owner's manual and Service and Warranty Information pamphlet that incorporated incorrect engine inspection and service intervals.

191.    Defendants benefited financially from their breaches of warranty, misrepresentations and fraud as described in this complaint.  Defendants denied legitimate class vehicle engine warranty claims and obtained further unwarranted financial gain.

192.    The proposed class representatives and proposed class members sustained monetary damages as described in this complaint.

193.    Allowing Defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

194.    The proposed class representatives and proposed class members request that Defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon Defendants as a result of their wrongful conduct. The proposed class representatives and proposed class members should be designated beneficiaries of the trust and obtain restitution for their out-of-pocket expenses caused by Defendants' conduct.

195.    The proposed class representatives and proposed class members demand judgment against Defendants for multiple damages, interest, costs and attorneys' fees.

### COUNT VIII
### INJUNCTIVE AND DECLARATORY RELIEF
(declaratory relief on behalf of Eiger, Cherry, Fucillo and declaratory relief subclass)

196.    Plaintiffs Eiger, Cherry, Fucillo and the declaratory relief subclass hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

197.    There is a justiciable dispute as to whether the oil filter housing incorporated in class engines should be covered under the Limited Powertrain Warranty and/or New Vehicle Limited Warranty accompanying class vehicles.

198.    Eiger, Cherry, Fucillo and the declaratory relief subclass seek certification pursuant to

Fed. R. Civ. Proc., Rule 23(b)(2) and request a declaratory judgment declaring that, going forward, the remedial and/or replacement work necessary to correct the defective oil filter housing incorporated in class engines together with all resulting damages are covered warranty claims.

199.    This remedy of final injunctive relief or corresponding declaratory relief is appropriate for and thereby requested for all members of the declaratory relief subclass who still possess their vehicles.

200.    This remedy is also authorized under the consumer fraud statutes of Illinois and North Carolina together with all other states that grant each respective proposed class representative and proposed class member the right to seek injunctive or declaratory relief for violations of such consumer fraud statutes.

## RELIEF DEMANDED

Wherefore, proposed class representatives request:

(a) An Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclasses as defined in ¶ 15 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

(b) An Order appointing proposed class representatives as representatives of the proposed class/subclasses and designating the law firms of Kantrowitz, Goldhamer & Graifman, P.C., and Thomas P. Sobran P.C. as counsel for the proposed class(es) pursuant to Fed. R. Civ. P. 23(g);

(c) Judgment for proposed class representatives and proposed class members against Defendants on all issues and counts;

(d) Actual, compensatory and/or statutory damages for proposed class representatives and proposed class members, including but not limited to multiple damages, together with interest, prejudgment interest, costs and attorneys' fees;

(e) Restitution for all engine repairs incurred by proposed class representatives and

proposed class members resulting from the defectively designed and manufactured class engine oil filter housing and incorrect maintenance and service intervals as set forth in the class vehicles' owner's manual and Service and Warranty Information pamphlet;

(f) Restitution of incidental expenses incurred by proposed class representatives and proposed class members, including but not limited to rental vehicles and other substitute transportation;

(g) A court issued declaratory judgment declaring that all class vehicle class engine claims caused by defective oil filter housing are within the scope of the class vehicles' warranty coverage; and,

(h) Any other relief deemed necessary by this Court.

## REQUEST FOR JURY TRIAL

The proposed class representatives and proposed class members request trial by jury on all issues and counts.

Dated: January 22, 2026

*/s/ Gary S. Graifman*
Gary S. Graifman, Esq.
Daniel C. Edelman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com
dedelman@kgglaw.com

*/s/ Thomas P. Sobran*
Thomas P. Sobran, Esq.
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
(to be admitted *pro hoc vice*)

***Attorneys for Plaintiffs***